IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO


Civil Action No. 07–cv–00998–PAB–KMT


LANE L. SNYDER,

     Plaintiff,

v.

SANDRA HARRIS,
DR. RICKTER,
DR. LOPEZ, and
WILLIAM A. KLENKE,

     Defendants.

---

### RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Kathleen M. Tafoya**
**United States Magistrate Judge**

     This case involves claims that Defendants violated Plaintiff's Eighth Amendment rights.

This matter is before the court on Defendants' "Motion for Summary Judgment" ([Doc. No.108]

[hereinafter "Mot."]) filed September 30, 2008.  Jurisdiction is premised upon 42 U.S.C. § 1983

(2008).

### PROCEDURAL HISTORY

     Plaintiff filed his *pro se* Amended Prisoner Complaint on June 26, 2007 ([Doc. No. 6]

[hereinafter "Compl."]), naming as defendants Mike Conly ("Dr. Conly"), Sandra Harris

("Harris"), Christen Miller ("Miller"), Doctor Rickter [sic] ("Dr. Richter"), and Doctor Lopez

("Dr. Lopez").  (Compl. at 1.)  On July 30, 2007, the Colorado Department of Corrections

("CDOC") Office of Correctional Legal Services notified the court that there was no record of a current CDOC employee named Michael Conly, nor did that name appear on the current CDOC Panel of Medical Consultants List.  (Doc. No. 11.)  On November 20, 2007, Magistrate Judge Michael J. Watanabe granted Plaintiff's Oral Motion to Voluntarily Dismiss Defendant Conly. (Doc. No. 35.)  Pursuant to said order, William A. Klenke ("Dr. Klenke") was added as a defendant, substituted for Dr. Conly.[1]  (*Id.*)  On March 10, 2008, Judge Lewis T. Babcock granted Plaintiff's motion to dismiss Christen Miller.  (Doc. No. 88.)

On February 28, 2008, Defendants Harris, Klenke, Richter, and Lopez filed their first Motion for Summary Judgment (Doc. No. 80) and on March 4, 2008 Plaintiff filed his Response ([Doc. No. 86] [hereinafter "Resp."]).  On September 2, 2008 this court recommended denial of Defendants' first Motion for Summary Judgment (Doc. No. 99) which was accepted by Judge Lewis T. Babcock on September 24, 2008.  (Doc. No. 107.)  On September 30, 2008, Defendants

---

[1] In Claim One of the Amended Prisoner Complaint, Plaintiff alleges Dr. Conly was deliberately indifferent to Plaintiff's spinal condition, in violation of Plaintiff's Eighth Amendment rights.  (Compl. at 6.)  Subsequently, Dr. Klenke was substituted for the nonexistent Dr. Conly on November 20, 2007.  (Doc. No. 35.)  Plaintiff's pleadings from this date onward, including his Response to Defendants' (first) Motion for Summary Judgment state his claim of deliberate indifference to his spinal condition against Dr. Klenke, making no mention of Dr. Conly again. Additionally, the Defendants seek summary judgment on Plaintiff's claim of deliberate indifference to his spinal condition against Dr. Klenke, not Dr. Conly.  (Mot. at 9.) Therefore, the court reads Claim One of Plaintiff's Amended Prisoner Complaint as referring to Dr. Klenke wherever it states "Dr. Conly."

filed their second Motion for Summary Judgment.  (Doc. No. 108.)  Plaintiff has not filed a

Response to the present motion.[2]  This motion is ripe for review and recommendation.

## STATEMENT OF THE CASE

The following facts are taken from Plaintiff's Amended Prisoner Complaint and the

parties' submissions with respect to this Recommendation.  Plaintiff is incarcerated in the

Colorado Territorial Correctional Facility (hereinafter "Territorial").  (Compl. at 2.)  In Claim

One, Plaintiff claims he received inadequate treatment from Dr. Klenke for his spinal condition.

(*Id.* at 6.)  Plaintiff alleges he requested medical attention on April 11, 2006 after experiencing

"intense lower back pain and abdominal pain."  (*Id.*)  After a consultation with William A.

Klenke, x-rays were taken on May 31, 2006 which revealed a bullet fragment lodged in

Plaintiff's spine.  (Mot. at 2.)  Plaintiff states he notified Dr. Klenke that he had been shot in

April 2004 and had been informed the bullet had been surgically removed at that time.[3]  (Compl.

at 6.)  Plaintiff alleges he inquired of Dr. Klenke regarding the course of treatment for his spinal

condition and was told he would be contacted in "a month or two."  (*Id.*)  Plaintiff maintains that

as of June 12, 2007, approximately one year later, he had not received any further treatment for

his spinal condition.  (*Id.*)  Plaintiff alleges Dr. Klenke's failure to treat his spinal condition

constitutes cruel and unusual punishment, a violation of his Eighth Amendment rights. (*Id.*)

---

[2] To the extent applicable, the court therefore reads Plaintiff's Response to Defendants' first Motion for Summary Judgment (Doc. No. 86) as his Response to the present motion.

[3] At the time of the alleged shooting Plaintiff was not within the custody of the CDOC. (Mot. at 2.)

In Claim Two, Plaintiff contends he received inadequate treatment for his Human Immunodeficiency Virus ("HIV") condition, causing the deterioration of his immune system and an outbreak of shingles.  (*Id*. at 7–8.)  Plaintiff states that during his first year at Territorial, Dr. Richter performed blood tests on him every three months to monitor Plaintiff's immune system. (*Id*. at 7.)  Plaintiff alleges that during these visits he reported sickness, "intense joint pain and head pain[]," weakness, "spots on [the] back of [his] tongue," and "nose bleeds."  (*Id.*)  Plaintiff claims his requests for treatment of these conditions were denied by Dr. Richter, who repeatedly claimed Plaintiff "[did not] need treatment."  (*Id.*)  Plaintiff states that, as a result of the lack of treatment, in June 2006 he was diagnosed with shingles.  (*Id.*)  After receiving treatment for shingles at "Denver Health Hospital," Plaintiff claims an unnamed physician informed him that "[he] should have been on meds for HIV," and that "[shingles] would not have happen[ed]."  (*Id*. at 8.)  The unnamed physician allegedly promised to notify Dr. Richter or the Territorial medical staff that Plaintiff "need[ed] to be put on meds for HIV."  (*Id.*)  Plaintiff maintains that as of June 2007, approximately one year later, he had not received any treatment for his HIV condition. (*Id.*)  Plaintiff states he filed a grievance regarding this issue but was denied by Defendant Harris.  (*Id.*)  Plaintiff contends the inadequate treatment of his HIV condition constitutes cruel and unusual punishment in violation of his Eighth Amendment rights.  (*Id.*)

In Claim Three, Plaintiff alleges he received inadequate treatment for his hemorrhoid condition.  (*Id.* at 9.)  After discovering blood in his stool, Plaintiff states he visited a doctor in September 2006 where a stool sample revealed the presence of blood.  (*Id.*)  Plaintiff claims he continued to find "blood about once every couple of weeks" through December 17, 2006, when a

colonoscopy was administered by Dr. Lopez.  (*Id.*)  The colonoscopy revealed that Plaintiff

suffered from more than three internal hemorrhoids.  (*Id.*)  Dr. Lopez allegedly prescribed

Plaintiff "Anucort" for eight weeks as treatment for this condition.  (*Id.*)  Plaintiff alleges this

treatment was ineffective, and that he filed a grievance to that effect.  (*Id.*)  Plaintiff claims

Defendant Harris denied his grievance, stating "[they] had been sent to [the] [d]octor."  (*Id.*)

Plaintiff states Dr. Lopez "knew about [the grievance complaining of ineffective treatment]"

(Resp. at 2) and "never did anything" after this grievance was filed.  (Compl. at 9.)  Plaintiff

claims that as of June 2007 he still had "blood and blood clots" in his stool.  (*Id.*)  Plaintiff

contends Dr. Lopez's failure to treat his continued hemorrhoid condition constitutes cruel and

unusual punishment in violation of his Eighth Amendment rights.  (*Id.*)

Plaintiff alleges he filed grievances regarding each of his three claims.  (*Id*. at 6–9.)

Plaintiff states the grievances filed regarding his HIV and hemorrhoid conditions were denied by

Defendant Harris.  (*Id*.)  Plaintiff contends that Defendant Harris' denial of these grievances

constitutes cruel and unusual punishment in violation of his Eighth Amendment rights.  (*Id*. at

8–9.)  Plaintiff seeks nominal damages, compensatory damages for pain and suffering related to

each of the three claims in the amount of $100,000, as well as punitive damages in the amount of

$450,000.  (Compl. at 11–12.)

Defendants' Motion for Summary Judgment seeks dismissal on the following grounds: 1)

The claim against Defendant Harris lacks an allegation of personal participation in the alleged

constitutional violations; 2) None of the defendants were deliberately indifferent to Plaintiff's

serious medical needs;  3) The claims against Defendants Klenke and Richter are barred by 42

U.S.C. § 1997e(a) for failure to exhaust administrative remedies pursuant to the Prison Litigation

Reform Act (hereinafter "PLRA"); and 4) Defendants are entitled to qualified immunity.

## STANDARD OF REVIEW

### 1.      *Pro Se Plaintiff*

Plaintiff is proceeding *pro se*.  The court, therefore, "review[s] his pleadings and other

papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys."

*Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted).  *See also*

*Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (holding allegations of a *pro se* complaint "to

less stringent standards than formal pleadings drafted by lawyers").  However, a *pro se* litigant's

"conclusory allegations without supporting factual averments are insufficient to state a claim

upon which relief can be based."  *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991).  A

court may not assume that a plaintiff can prove facts that have not been alleged, or that a

defendant has violated laws in ways that a plaintiff has not alleged.  *Associated Gen. Contractors*

*of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).  *See also Whitney v.*

*New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (court may not "supply additional factual

allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156,

1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the

absence of any discussion of those issues").  The plaintiff's *pro se* status does not entitle him to

application of different rules.  *See Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002).

**2.     *Summary Judgment***

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, the court may grant summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c) (2006); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986); *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994). The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works*, 36 F.3d at 1518 (citing *Celotex*, 477 U.S. at 325). The nonmoving party may not rest solely on the allegations in the pleadings, but must instead designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see* Fed. R. Civ. P. 56(e) (2006). A fact in dispute is "material" if it might affect the outcome of the suit under the governing law; the dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997) (citing *Anderson*, 477 U.S. at 248).

The court may consider only admissible evidence when ruling on a summary judgment motion. *See World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985). The factual record and reasonable inferences therefrom are viewed in the light most favorable to

the party opposing summary judgment. *Byers v. City of Albuquerque*, 150 F.3d 1271, 1274 (10th

Cir. 1998) (citing *Concrete Works*, 36 F.3d at 1517).

## ANALYSIS

### 1.    *Defendant Klenke*

### A.    *Exhaustion of Administrative Remedies*

Defendants move for summary judgment on Plaintiff's claim against Defendant Klenke

based upon Plaintiff's failure to exhaust his administrative remedies. (Mot. at 5–8.) Prior to

filing this civil action, Plaintiff was required to exhaust administrative remedies pursuant to the

PLRA. *Booth v. Churner*, 532 U.S. 731, 741 (2001). Section 1997e(a) provides:

> [n]o action shall be brought with respect to prison conditions under section 1983
> of this title, or any other Federal law, by a prisoner confined in any jail, prison, or
> other correctional facility until such administrative remedies as are available are
> exhausted.

42 U.S.C. § 1997e(a) (2008).

The Supreme Court recently set forth a new standard to govern PLRA lawsuits:

"[F]ailure to exhaust is an affirmative defense under the PLRA, and . . . inmates are not required

to specially plead or demonstrate exhaustion in their complaints." *Jones v. Bock,* 549 U.S. 199,

216, 127 S. Ct. 910, 921 (2007). "[T]he burden of proof for the exhaustion of administrative

remedies in a suit governed by the PLRA lies with the defendant." *Roberts v. Barreras*, 484

F.3d 1236, 1241 (10th Cir. 2007).

After *Jones*, dismissal under § 1997e(a) for failure to exhaust administrative remedies cannot usually be made on pleadings without proof.  *See Freeman v. Watkins*, 479 F.3d 1257, 1260 (10th Cir. 2007) ("'[O]nly in rare cases will a district court be able to conclude from the face of the complaint that a prisoner has not exhausted his administrative remedies and that he is without a valid excuse.'") (quoting *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225).

The Colorado Department of Corrections has an administrative grievance process set forth in Administrative Regulation 850-04 (hereinafter "AR 850-04").  (Mot., Ex. B.)  AR 850-04 requires that prisoners attempt to resolve any issue or complaint they have by filing a Step 1 grievance.  (Colo. Dep't of Corr. Reg. 850-04 § IV(B)(4)(b).)  If the prisoner is unsatisfied with the outcome, he must then proceed to a Step 2 grievance.  (*Id.*)  If the prisoner is still unsatisfied, he must proceed to a final Step 3 grievance upon which "the decision of the grievance officer is the final agency action."  (Colo. Dep't of Corr. Reg. 850-04 § IV(C)(1)(c)(4).)

Defendants assert Plaintiff's claim against Defendant Klenke should be dismissed for failure to exhaust administrative remedies as required by the PLRA.  (Mot. at 8.)  Defendants attach the Affidavit of Anthony Decesaro (hereinafter "Decesaro Affidavit"), a Step 3 Grievance Officer employed by the CDOC.  (Mot., Ex. C.)  Mr. Decesaro's sworn affidavit states that, as part of his job, he investigates and answers all Step 3 grievances filed by inmates within the CDOC.  (*Id.*, ¶ 3.)  Mr. Decesaro states that, after reviewing CDOC records of grievances as of May 14, 2007, he "found no Step 3 grievance filed by Inmate Lane L. Snyder, #126117 regarding the medical treatment for a gunshot bullet fragment in his spine."  (*Id.*, ¶ 5.)  Indeed, Plaintiff states that after beginning the grievance process on this claim he "then stopped [the]

grievance for [the] bullet [condition]" due to his "problem with HIV and shingles." (Compl. at 6.) "[A]n inmate who begins the grievance process but does not complete it is barred from pursuing a §1983 claim under PLRA for failure to exhaust his administrative remedies." *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) (citing *Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001)). Accordingly, this court recommends Plaintiff's claim against Defendant Klenke in his individual capacity be dismissed without prejudice.

As Plaintiff's claim against Dr. Klenke, in his individual capacity, is barred for failure to exhaust administrative remedies, the court need not address Defendants' Eighth Amendment and qualified immunity arguments as to this defendant.

## 2.   *Defendant Richter*

### A.   *Exhaustion of Administrative Remedies*

Defendants argue that Plaintiff's claim for deliberate indifference to his HIV condition against Defendant Richter should be dismissed for failure to exhaust administrative remedies as required by the PLRA. (Mot. at 8.) The Decesaro Affidavit states CDOC records contain a Step 3 grievance filed by inmate Lane L. Snyder, #126117 regarding treatment of his HIV infection, dated May 10, 2007 and received May 25, 2007. (*Id.*, ¶ 6.) Plaintiff has also submitted a copy of this grievance. (Resp. at 6.) Plaintiff commenced the present civil action on May 14, 2007 ([Prisoner Compl. at 1] [Doc. No. 6]), 15 days before his Step 3 grievance had been received by the CDOC. Merely submitting a Step 3 grievance without allowing the possibility of an administrative remedy to arise does not constitute exhaustion of administrative remedies. Other

than requesting the court "excuse the exhaustion requirement" (Resp. at 1), which the court lacks the authority to do, Plaintiff's pleadings lack allegations to dispute the facts stated in the Decesaro Affidavit.  Accordingly, Plaintiff's claim against Defendant Richter in his individual capacity can be dismissed without prejudice for failure to exhaust administrative remedies pursuant to the PLRA.

### B. *Eighth Amendment Deliberate Indifference Claim*

Given that dismissal pursuant to the PLRA is without prejudice, the court also addresses the merits of Plaintiff's claim against Dr. Richter.  Plaintiff claims Dr. Richter's refusal to treat his HIV condition despite his requests constitutes deliberate indifference to serious medical needs.  (Compl. at 9.)  Defendants argue Plaintiff received "proper monitoring and treatment for his HIV [condition]."  (Resp. at 12.)

Prison officials violate the Eighth Amendment if their "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (internal quotation marks omitted).  "[A] prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006) (quoting *Estelle*, 429 U.S. at 106). The test for deliberate indifference involves both an objective and a subjective component. *Sealock v. Colo.*, 218 F.3d 1205, 1209 (2000).

The subjective component of the deliberate indifference test is met if the defendant "knows of and disregards an excessive risk to inmate health or safety." *Sealock*, 218 F.3d at

11

1209.  "Deliberate indifference" does not require a showing of express intent to harm.  *Mata v. Saiz*, 427 F.3d 745, 752 (10th Cir. 2005).  To violate the Cruel and Unusual Punishments Clause, a prison official must have a "sufficiently culpable state of mind."  *Farmer v. Brennan*, 511 U.S. 825, 833 (1970).  "A negligent failure to provide adequate medical care, even one constituting medical malpractice, does not give rise to a constitutional violation."  *Perkins v. Kansas Dept. of Corrections*, 165 F.3d 803, 811 (10th Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. at 105–06).

Defendants assert that Plaintiff is unable to sustain the subjective prong of his deliberate indifference claim on summary judgment, as there is no genuine issue as to whether "[Dr. Richter] . . . disregarded an excessive risk to [Plaintiff's] health or safety."  (Mot. at 12.)  Defendants direct the court's attention to the Affidavit of Jay Richter, M.D. (hereinafter "Richter Affidavit").  (*Id.*, Ex. D.)  Therein, Dr. Richter states that he "[saw] Snyder on eight occasions between September 13, 2005 and September 25, 2007 relating to his medical treatment for his HIV infection."  (*Id., ¶ 3.*)  Attached to the Richter Affidavit are the results of at least eight blood tests ordered by Dr. Richter to monitor Plaintiff's HIV condition during this time period.  (*Id.* at 6–18.)

With regard to treatment, the Richter Affidavit states that "during the relevant time period, [Plaintiff] did not meet the . . . criteria" set out in the "Department of Health and Human Services Guidelines for the Use of Antiretroviral Agents in HIV Infected Adults and Adolescents" (hereinafter "HHS Guidelines").  (*Id., ¶¶ 8–9.*)  In accordance with the HHS Guidelines' recommendation that "treatment should be individualized," Dr. Richter states he

12

ordered HIV medication at Plaintiff's request despite believing it was not mandatory.  (*Id.*, ¶¶ 8–13.)

Moreover, Dr. Richter states that "none of [the] symptoms [reported by Plaintiff during this time] appeared to be related to [Plaintiff's] HIV infection or consistent with any serious illness."  (*Id.,* ¶ 9.)  Contradicting the core of Plaintiff's claim, Dr. Richter states that "prior to [Plaintiff's] episode with shingles . . . [Plaintiff] did not request antiviral treatment for his HIV infection."  (*Id.*, ¶ 11.)  Indeed, even after Plaintiff's episode with shingles, Dr. Richter states he "offered to place [Plaintiff] on antiretroviral medications" but that Plaintiff agreed "to continue [monitoring] . . . without . . . HIV medications."  (*Id.*, ¶ 12.)  According to the Richter Affidavit, even if Plaintiff had received antiviral therapy prior to the shingles outbreak, "the use of [antiviral therapy] has little effect in reducing the chance that an HIV infected individual will develop shingles."  (*Id.,* ¶ 14.)

Even viewing the factual record and reasonable inferences therefrom in the light most favorable to the plaintiff, the Richter Affidavit belies the concept of deliberate indifference on the part of Dr. Richter.  Plaintiff's claim amounts to a disagreement over the prescribed course of treatment for his HIV condition.  However, "a prisoner who merely disagrees with a diagnosis or a prescribed course of treatment does not state a constitutional violation."  *Perkins v. Kansas Dept. of Corrections*, 165 F.3d 803, 811 (10th Cir. 1999) (citing *Estelle*, 429 U.S. at 107).  Thus, even if Plaintiff had established a genuine issue as to the objective component of deliberate indifference, his failure to do so as to the subjective component is fatal to his Eighth Amendment claim against Dr. Richter.  Accordingly, it is recommended that Plaintiff's claim against Dr.

Richter be dismissed in its entirety with prejudice.  As this court recommends Richter be dismissed on the merits, it will not address qualified immunity as to this defendant.

**3.      *Defendant Lopez***

   **A.      *Eighth Amendment Deliberate Indifference Claim***

Plaintiff alleges Dr. Lopez was deliberately indifferent to his serious medical needs because, knowing the treatment Dr. Lopez had prescribed for Plaintiff's hemorrhoid condition had been ineffective, Dr. Lopez "never did anything" to further treat Plaintiff.  (Compl. at 9.) Contrary to Defendant's arguments, whether Dr. Lopez was deliberately indifferent to Plaintiff's <u>initial</u> presentation of his hemorrhoid condition is not at issue before this court.  Rather, the essence of Plaintiff's claim is that Dr. Lopez was deliberately indifferent to his <u>continued</u> hemorrhoid condition.

The objective prong of the deliberate indifference test requires that the alleged deprivation of the inmate's constitutional right be "sufficiently serious" — one that "has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  *Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001) (quoting *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999)).

Dr. Lopez attempts to address the objective prong of Plaintiff's deliberate indifference claim by boldly concluding, without more, that Plaintiff "fails to demonstrate that he was deprived of a 'sufficiently serious' need."  (*Id*. at 11.)  Absent from Defendant's motion and supporting documents is any discussion whatsoever of whether Plaintiff's *continued* hemorrhoid

condition had "been diagnosed by a physician as mandating treatment or . . . [was] so obvious that even a lay person would [have] easily recognize[d] the necessity for a doctor's attention." *Oxendine*, 241 F.3d at 1276.  Moreover, Dr. Lopez diagnosed Plaintiff's initial presentation of his hemorrhoid condition as mandating "conservative treatment" with "rectal suppositories and stool softeners."  (Mot., Ex. E at 1–2.)  According to Plaintiff, this treatment proved ineffective. Viewing the factual record in the light most favorable to the plaintiff suggests that the continuation of the conservative treatment should have been revisited.  Dr. Lopez fails to persuade the court there is no genuine issue as to whether Plaintiff's continued hemorrhoid condition was sufficiently serious for Eighth Amendment analysis purposes.  Accordingly, this court finds there is a genuine issue of material fact as to the objective prong of Plaintiff's deliberate indifference claim against Dr. Lopez.

The subjective component of the deliberate indifference test is met if the defendant "*knows of* and disregards an excessive risk to inmate health or safety."  *Sealock*, 218 F.3d at 1209 (emphasis added).  Plaintiff alleges he "put in [a] grievance and said [the] medication don't work[,] [Dr. Lopez] knew about it, [and] failed to respond."  (Resp. at 2.)  Defendants' motion and supporting documents contain no evidence whatsoever disputing Plaintiff's allegation that Dr. Lopez knew the treatment he had prescribed for Plaintiff's hemorrhoid condition had been ineffective or disputing that Dr. Lopez "failed to respond" to an allegedly excessive risk to Plaintiff's health or safety.

Rather, in an attempt to establish that there is no genuine issue as to the subjective prong of Plaintiff's claim against Dr. Lopez, Defendants rely exclusively on Dr. Lopez's Response to

Plaintiff's First Set of Interrogatories.  (Mot., Ex. E.)  Dr. Lopez states that "on or about December 18, 2006, [Dr. Lopez] saw inmate Snyder for complaints regarding rectal bleeding . . . a colonoscopy was performed . . . [and Dr. Lopez] recommended conservative treatment with suppositories [and] stool softeners."  (*Id*. at 1.)  These facts are not in dispute.  However, Defendants fail to address the core of Plaintiff's Eighth Amendment claim: whether Dr. Lopez failed to consider or prescribe alternate treatment knowing the December 18, 2006 treatment had been ineffective.  Defendants' motion is entirely silent on these essential questions.

Defendants characterize Plaintiff's claim as a "disagreement" between patient and physician concerning the effectiveness of the chosen treatment (Mot. at 11) and cite to several authorities for the proposition that such a "disagreement . . . does not state a claim under § 1983."  (*Id*. at 11–12.)  Defendants, however, fail to provide the court with any evidence that such a "disagreement" existed and never acknowledge whether Dr. Lopez reconsidered continuance of the treatment as prescribed in light of Plaintiff's continuing complaints. Defendants further argue, citing *Callahan v. Poppell*, 471 F.3d 1155, 1160 (10th Cir. 2006) (quoting *Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996)), that "medical decisions . . . such as whether one course of treatment is preferable to another, are beyond the [Eighth] Amendment's purview."  Dr. Lopez , however, fails to assert that his inaction was the result of a medical decision regarding the preferred course of treatment for Plaintiff's hemorrhoid condition in light of subsequent, continued complaints.  While this court agrees that "an inadvertent failure to provide adequate medical care" or an allegation "that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment

under the Eighth Amendment," *Estelle v. Gamble,* 429 U.S. 97, at 105-06, the defendant has left

the record barren of evidence even alluding to whether Dr. Lopez ever considered alternative

treatment for Plaintiff or knew that the treatment prescribed might not be working.[4]

As Dr. Lopez fails to provide any evidence disputing the gravamen of Plaintiff's

allegations, he fails to persuade the court that there is no genuine issue as to Plaintiff's deliberate

indifference claim against him.  Accordingly, this court recommends Defendants' motion for

summary judgment as to Dr. Lopez, in his individual capacity, be denied.

### B.       *Qualified Immunity*

Dr. Lopez asserts he is entitled to qualified immunity on Plaintiff's deliberate

indifference claim asserted against him in his individual capacity.  (Mot. at 13.)  Qualified

immunity shields government officials sued in their individual capacities from liability for civil

damages provided that their conduct when committed did not violate "clearly established

statutory or constitutional rights of which a reasonable person would have known."  *Harlow v.*

*Fitzgerald*, 457 U.S. 800, 818 (1982).  In order for a right to be "clearly established" for

purposes of assessing entitlement to qualified immunity, "[t]he contours of the right must be

sufficiently clear that a reasonable official would understand that what he is doing violates that

right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).  When analyzing the issue of qualified

immunity, the court must determine (1) whether the plaintiff has sufficiently alleged violation of

---

[4] In the context of a motion for summary judgment, medical records and affidavits of medical personnel could have been considered on these issues if produced by the defendants.

17

a statutory or constitutional right; and (2) whether the right was clearly established at the time of the violation. *Pearson v. Callahan*, 129 S. Ct. 808, 817 (2009).

Here, Plaintiff has alleged that Dr. Lopez knew that Plaintiff's hemorrhoid condition had been unresponsive to the initial course of treatment but failed to take further action to treat it. (Resp. at 2.) Such a claim is recognized under the Eighth Amendment as deliberate indifference to serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Moreover, prisoners' Eighth Amendment rights were clearly established long before the events in this case. *See Estelle v. Gamble.* This court finds that Plaintiff has sufficiently alleged that Dr. Lopez violated his Eighth Amendment right to be free of cruel and unusual punishment and that this right was clearly established at the time of the alleged violation. Accordingly, this court recommends Dr. Lopez not be found to be entitled to qualified immunity on Plaintiff's deliberate indifference claim against him in his individual capacity.

## 4.   *Defendant Harris*

### A.   *Personal Participation – 42 U.S.C. § 1983*

Defendants assert that by failing to allege Defendant Harris' personal participation in any constitutional wrongdoing, Plaintiff has failed to state a section 1983 claim. (Mot. at 4–5.) *Alvarado* provides that "courts should look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." 493 F.3d 1210, 1215 n.2 (10th Cir. 2007). "[T]o state a claim in federal court, a complaint must explain what each defendant did to him or her; when the defendant did it; how the defendant's action harmed him

or her, and what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007).

Personal participation is an essential allegation in a section 1983 civil rights action. *Bennett v. Passic*, 545 F.2d 1260, 1262–63. *See Meade v. Grubbs*, 841 F.2d 1512, 1528 (10th Cir. 1988) (stating that before liability may be imposed, a supervisor must have "participated or acquiesced" in the conduct which constitutes a constitutional deprivation). To establish personal liability, a plaintiff must show that the official caused the deprivation of a federal right. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). There must be an affirmative link between the alleged constitutional violation and each defendant's participation, control or direction, or failure to supervise. *See Butler v. City of Norman*, 992 F.2d 1053, 1055 (10th Cir. 1993).

In this case, the singular basis for Plaintiff's claim against Defendant Harris is her denial of his various grievances. However, the "denial of [] grievances alone is insufficient to establish personal participation in the alleged constitutional violations." *Whitington v. Ortiz*, No. 07-CV-1425, 2009 WL 74471, at *12 (10th Cir. Jan. 13, 2009) (citing *Larson v. Meek*, 240 Fed. Appx. 777, 780, 2007 WL 1705086 (10th Cir. 2007)). Plaintiff's failure to state a section 1983 claim against Defendant Harris precludes the existence of a genuine issue for trial. Accordingly, summary judgment is properly granted on Plaintiff's claim against Defendant Harris in her individual capacity. This court need not address Defendants' qualified immunity argument as to Defendant Harris.

**5.      *Eleventh Amendment Immunity***

Although Plaintiff states his claims against each defendant in their individual and official

capacities, (Resp. at 1) Defendants fail to address the applicability of Eleventh Amendment

Immunity on summary judgment.  In the interest of judicial economy, the court addresses the

defendants' official capacity liability *sua sponte*.

Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but

it does not provide a federal forum for every such litigant.  It is well-established that "the

Eleventh Amendment precludes a federal court from assessing damages against state officials

sued in their official capacities because such suits are in essence suits against the state." *Hunt v.*

*Bennett*, 17 F.3d 1263, 1267 (10th Cir. 1994).  Absent an unmistakable waiver by a state of its

Eleventh Amendment immunity, or an unmistakable abrogation of such immunity by Congress,

the Eleventh Amendment provides absolute immunity from suit in federal courts for states and

their agencies.  *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 241 (1985).

 Here, Defendants Harris and Dr. Richter are direct employees of the CDOC.  (Answer to

Am. Prisoner Compl., ¶¶ 3–4 [filed September 24, 2007] [Doc. No. 24] [hereinafter "Answer."])

Defendants state that Dr. Lopez "is a consulting physician and participant on the CDOC Panel of

Medical Consultants"  (*Id.*, ¶ 6) and that his activities while acting in his capacity as a CDOC

physician were "encompassed within the sphere of [his] official responsibilities."  (Mot. at 13.)

As there has been no waiver of immunity by Colorado or its state agencies from suits for

damages under section 1983, Defendants Harris, Dr. Richter, and Dr. Lopez are entitled to

absolute immunity under the Eleventh Amendment. Accordingly, this court recommends Plaintiff's claims for damages against Defendants Harris, Dr. Richter, and Dr. Lopez in their official capacities be dismissed with prejudice.

Defendants expressly deny that Dr. Klenke is an employee of the CDOC. (Answer to Am. Prisoner Compl., ¶ 2 [filed April 25, 2008] [Doc. No. 94] [hereinafter "Klenke Answer."]) Contrarily, Defendants assert that Dr. Klenke's activities were "encompassed within the sphere of [his] official responsibilities." (Mot. at 13.) Given this ambiguity, it is unclear whether Dr. Klenke is entitled to absolute immunity under the Eleventh Amendment in his official capacity.[5]

WHEREFORE, for the foregoing reasons, the court respectfully

RECOMMENDS that Defendants' "Motion For Summary Judgment" (Doc. No. 108) be GRANTED in part as follows:

1.    Plaintiff's claim against Defendant Klenke, in his individual capacity, contained in Claim One, be dismissed without prejudice; and

2.    Plaintiff's claim against Defendant Richter, in his individual capacity, contained in Claim Two, be dismissed with prejudice; and

3.    Plaintiff's claim against Defendant Harris be dismissed; and

4.    Plaintiff's claims for compensatory damages against Defendants Harris, Dr. Richter, and Dr. Lopez in their official capacities be dismissed with prejudice.

---

[5] *But see* analysis *infra* Section 1(A). All claims in this case against Dr. Klenke, in all capacities, should be dismissed without prejudice for failure to exhaust administrative remedies.

This court further RECOMMENDS that Defendants' "Motion For Summary Judgment" (Doc. No. 108) be DENIED in part as follows:

1.      Defendants' Motion for Summary Judgment on Plaintiff's claim against Dr. Lopez, in his individual capacity, contained in Claim Three, be denied.

## ADVISEMENT TO THE PARTIES

Within ten days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).  A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review.  "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Property*, 73 F.3d

at 1059-60 (a party's objections to the Magistrate Judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the District Court or for appellate review);  *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling).  *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 28th  day of April, 2009.

**BY THE COURT:**

Kathleen M. Tafoya
United States Magistrate Judge